UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DEBRA A. MORROW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 1:07-CV-170 |
| v. | ) |
| | ) *Mattice / Lee* |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

This action was instituted by the Plaintiff pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the Plaintiff supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's motion for judgment on the pleadings [Doc. 14] and Defendant's motion for summary judgment [Doc. 18].

For the reasons stated herein, I **RECOMMEND** that: (1) Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**; (2) Defendant's motion for summary judgment [Doc. 18] be

**GRANTED**; (3) the decision of the Commissioner be **AFFIRMED**; and (4) this action be **DISMISSED**.

## Administrative Proceedings

Plaintiff filed an application for SSI on June 22, 2005, alleging disability beginning on January 1, 2000 (Tr. 58-64).[1] After her application was denied initially and upon reconsideration (Tr. 39-44, 47-50), Plaintiff requested a hearing before an ALJ (Tr. 37). Following a hearing, an ALJ issued a decision on February 15, 2007, denying SSI benefits to Plaintiff on the ground she retained the residual functional capacity ("RFC") to perform jobs which existed in significant numbers in the national and regional economies (Tr. 14-28). The decision of the ALJ became the final decision of the Commissioner on May 18, 2007, when the Appeals Council denied Plaintiff's request for review (Tr. 5-7).

---

[1] Although Plaintiff alleged disability beginning on January 1, 2000, the ALJ noted that Plaintiff:

> has previously filed applications for supplemental security income on multiple occasions. Since the alleged onset date, the claimant filed for supplemental security income on July 9, 2001. Disability was denied initially and upon reconsideration and, by a decision dated January 30, 2004, a prior Administrative Law Judge determined the claimant was not disabled. The claimant subsequently filed another application on February 9, 2004. Disability was denied initially on August 4, 2004 and on reconsideration on December 17, 2004. The claimant did not pursue further appeal of those denials and new and material evidence has not been submitted which warrants reopening any prior application.

(Tr. 17). A court may not review a refusal to reopen an application for benefits absent a constitutional challenge. *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231-32 (6th Cir. 1990) (per curiam) (citing *Califano v. Sanders*, 430 U.S. 99, 107-08 (1977)). Here, Plaintiff has not challenged the ALJ's refusal to reopen his prior applications for SSI benefits on any grounds. Thus, the denial of Plaintiff's prior SSI benefits is not an issue in this appeal.

## Standard of Review

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

## How Disability Benefits Are Determined

The Sixth Circuit recently reiterated the five-step procedure used by the Social Security Administration ("SSA") to determine eligibility for disability benefits as follows:

> The [Social Security] Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). Such claimants qualify as "disabled." *Id.* A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To identify claimants who satisfy this definition of disability, the SSA uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4). The five steps are as follows:
> 
> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. *Id.* § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.
> 
> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.
> 
> In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite

[her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.;* § 404.1560(c)(1). The SSA bears the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

### **ALJ's Findings**

The ALJ made the following findings in support of Commissioner's decision, which are conclusive if they are supported by substantial evidence in the record:

1. The claimant has not engaged in substantial gainful activity since January 1, 2000, the alleged onset date . . . .

2. The claimant has the following severe impairments: diabetes mellitus, hypertensive cardiomyopathy, asthma, degenerative disc disease, scoliosis, arthritis, plantar fasciitis, migraine headaches, and a dysthymic disorder . . . .

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform unskilled sedentary work in a clean environment and which requires no more than frequent postural movements, avoids the general public, and involves only simple one and two step instructions.

5. The claimant has no past relevant work experience . . . .

6. The claimant . . . is 42 years old, which is defined as a younger individual. . . .

7. The claimant has a limited education and is able to communicate in English . . . .

8. Transferability of job skills is not an issue because the claimant does not have past relevant work . . . .

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . .

10. The claimant has not been under a disability, as defined in the Social Security Act, at any time since her alleged onset date or since June 20, 2005, the date her current application was filed . . . .

(Tr. 19-28).

## Issues Presented by Plaintiff

I. The ALJ and thereby the Commissioner erred by disregarding opinions by two of Plaintiff's long-time treating physicians and by a consultative examiner, all of which indicated the Plaintiff was either unable to sustain sedentary work or work a full eight-hour workday.

II. The Commissioner's decision should be reversed and/or remanded with instructions to reevaluate the Plaintiff's severe physical impairment because the record overwhelming supports disability in this case.

[Doc. 15 at 3-4].

## Review of Evidence

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff was 42 years old at the time of the ALJ's decision (Tr. 58). She completed the ninth grade in school (Tr. 435). Plaintiff ceased working in June of 1998, but had previously worked as a production line worker in a factory, a fast food worker/server, a chicken processor, and a packer

in a factory (Tr. 435-36).

*Medical Evidence*

For the sake of clarity and conciseness, only the evidence related to Plaintiff's claims of error have been summarized herein. Although all of the medical evidence is not explicitly discussed herein, it has been reviewed and considered.

Denise L. Harkins, M.D. saw Plaintiff on April 16, 2002 (Tr. 201-04). Based upon a medical history and examination, Dr. Harkins' impression was: (1) possible pneumonia; (2) asthma; (3) syncope/presyncopal episode; (4) poorly controlled hypertension; (5) stated history of diabetes; and (6) hypokalemia (Tr. 204).

Plaintiff was examined by Dr. Harkins on February 6, 2004 (Tr. 325-330); on February 20, 2004 (Tr. 320-24); and on March 31, 2004 (Tr. 315-19), and diagnosed with: (1) synovitis and tenosynovitis, right knee; (2) derangement, internal knee with hydroarthrosis; (3) chest pain unspecified; (4) obesity; (5) pain in joint, multiple sites; (6) elevated sedimentation rate; (7) transient cerebral ischemia; (8) diabetes mellitus, type II; (9) hyperlipidemia, mixed; (10) essential hypertension; (11) hospitalization for transient cerebral ischemia; (12) plantar fasciitis, bilateral; (13) fatigue; (14) depression/anxiety; and (15) fibromyalgia (Tr. 318, 323, 329).

Dr. Harkins saw Plaintiff on May 26, 2004 (Tr. 310-14) and diagnosed with: (1) synovitis and tenosynovitis, right knee; (2) derangement, internal left knee with hydroarthrosis; (3) chest pain unspecified; (4) obesity; (5) pain in joint, multiple sites; (6) elevated sedimentation rate; (7) transient cerebral ischemia; (8) hyperlipidemia, mixed; (9) essential hypertension; (10) hospitalization for cerebral transient ischemia; (11) plantar fasciitis, bilateral; (12) fatigue; (13) depression/anxiety; (14) fibromyalgia; (15) obesity improved; (16) diabetes mellitus, type II improved; (17)

hyperlipidemia, mixed improved; (18) essential hypertension improved; (19) fatigue improved; and (20) depression/anxiety improved (Tr. 313).

Dr. Harkins again saw Plaintiff on July 21, 2004 and diagnosed with: (1) synovitis and tenosynovitis, right knee; (2) derangement, internal left knee with hydroarthrosis; (3) chest pain unspecified; (4) obesity; (5) pain in joint, multiple sites; (6) elevated sedimentation rate; (7) transient cerebral ischemia; (8) diabetes mellitus, type II; (9) hyperlipidemia, mixed; (10) essential hypertension; (11) hospitalization for transient cerebral ischemia; (12) plantar fasciitis, bilateral; (13) fatigue; (14) depression/anxiety; (15) fibromyalgia; (16) chest pain unspecified unchanged; (17) obesity, unchanged; (18) pain in joint, multiple sites, unchanged; (19) diabetes mellitus, type II, improved; (20) essential hypertension, improved; (21) depression/anxiety, unchanged (Tr. 308).

Plaintiff was seen by Dr. Harkins on November 2, 2004 (Tr. 299-304) and diagnosed with: (1) synovitis and tenosynovitis, right knee; (2) derangement, internal left knee with hydroarthrosis; (3) chest pain unspecified; (4) obesity; (5) pain in joint, multiple sites; (6) elevated sedimentation rate; (7) transient cerebral ischemia; (8) diabetes mellitus, type II; (9) hyperlipidemia, mixed; (10) essential hypertension; (11) hospitalization for transient cerebral ischemia; (12) plantar fasciitis, bilateral; (13) fatigue; (14) depression/anxiety; (15) fibromyalgia; (16) asthma; (17) obesity unchanged; (18) diabetes mellitus, type II unchanged; (19) hyperlipidemia, mixed unchanged; (20) essential hypertension improved; (21) asthma unchanged; (22) fibromyalgia unchanged (Tr. 303).

Plaintiff was seen by Dr. Harkins on December 14, 2004 (Tr. 290-94) and diagnosed with: (1) synovitis and tenosynovitis, right knee; (2) derangement, internal left knee with hydroarthrosis; (3) chest pain unspecified; (4) obesity; (5) pain in joint, multiple sites; (6) elevated sedimentation

rate; (7) transient cerebral ischemia; (8) hyperlipidemia, mixed; (9) essential hypertension; (10) hospitalization for transient cerebral ischemia; (11) plantar fasciitis, bilateral; (12) fatigue; (13) depression/anxiety; (14) fibromyalgia; (15) asthma; (16) diabetes mellitus, type II improved; (17) hyperlipidemia, mixed improved; (18) essential hypertension improved; and (19) asthma unchanged (Tr. 293).

A letter from Dr. Harkins, dated August 1, 2005, concerning Plaintiff appears in the record (Tr. 285). The letter states Plaintiff has been under Dr. Harkins' care since April 2002 for complicated insulin dependent diabetes mellitus with neuropathy and retinopathy, difficult to control hypertension, complicated migraines, possible recurrent transient ischemic attacks ("TIA"), asthma, degenerative disc disease of the lumbar spine, scoliosis, osteoarthritis, fibromyalgia, and hypertensive cardiomyopathy (*id.*). The letter further states that:

> [d]ue to her diabetic neuropathy, [degenerative disc disease] of her [lumbar spine], scoliosis, and fibromyalgia she has significant problems with fine motor movements and manipulations, lifting, carrying, and prolonged standing or sitting. Her difficult to control hypertension has resultant (sic) in problems with dependent edema in her hands and legs.
>
> Her asthma and allergies make her sensitive to dust, chemicals, fumes and extreme temperatures . . . .
>
> [Plaintiff] is totally disabled and I do not foresee her ever being reliably employable due to her chronic conditions.

(*Id.*).

Angela Walter, M.D. saw Plaintiff on August 11, 2005, at the request of the state agency (Tr. 331-336). Based upon a history and a physical examination, Dr. Walter diagnosed: (1) uncontrolled hypertension; (2) recurrent lower extremity edema; (3) upper extremity weakness, with recurrent edema; (4) diabetes mellitus; (5) pain of the right leg, specifically the right knee; and (6) obesity (Tr.

334). Dr. Walter stated that based upon her examination, Plaintiff had the capacity to occasionally lift and/or carry, including upper pulling for up to a third of an eight-hour workday, a maximum of less than 10 pounds, frequently lift and/or carry no weight; can stand and/or walk, with normal breaks, for a total of less than two hours in an eight-hour workday; can sit with normal breaks for a total of less than six hours in an eight hour workday (Tr. 335). Dr. Walter also stated: (1) Plaintiff's difficulty in ambulating was demonstrated by her need to put her outstretched hands on the walls for stability while walking through Dr. Walter's office and (2) during the examination process, Plaintiff had difficulty sitting for more than ten minutes without the need to reposition herself (*id.*).

A letter from Lisa Parsons, D.P.M. dated September 12, 2006, stated Plaintiff was seen in on September 7, 2006, and diagnosed with: (1) plantar fasciitis and (2) diabetes (Tr. 393). The letter also states: (1) Plaintiff will need to stay off her feet as much as possible, (2) do stretching; (3) wear good supportive shoes; and (4) apply ice at night (*id.*).

*Hearing Testimony*

    **1.**    **Plaintiff**

Plaintiff completed the ninth grade and last worked in June of 1998 (Tr. 435-36). Plaintiff testified she has a problem with her heart and also experiences fatigue (Tr. 436-37). She testified she "sometimes" experiences migraines about twice a week and estimated she has about five migraines per month (Tr. 437-38). She stated when she experiences a migraine the sunlight hurts her eyes and she has to stay in a dark room (*id.*). She stated she has trouble seeing and has not driven in three or four years (*id.*). She stated she never had a driver's license, but drove when necessary (*id.*). Plaintiff stated her doctor told her not to drive because she passed out in the doctor's

office (Tr. 439). Plaintiff stated she is also having problems with fine motor movements and with her hands (*id.*). When she gets up in the morning her hands are swollen and her fingers are aching and crooked and she has to "straighten" them out (*id.*). Plaintiff testified it takes her between an hour and 90 minutes to "straighten" out her fingers and use her hands on a normal basis (*id.*). She stated when set gets up in the morning she has to exercise her feet because sometimes she stumbles (Tr. 440). She takes breaks during the day as needed in order to stay off her feet (*id.*). Plaintiff estimated that if she added up the total duration of all the breaks she took during the day, it would total between thirty minutes and an hour (Tr. 440-41). Plaintiff further stated she has asthma and uses her inhaler and nebulizer four times per day (Tr. 444).

Plaintiff lives with her five children (Tr. 441). She stated her mother and some friends "help out a whole lot" in caring for her children (*id.*). Plaintiff stated she will cook a simple meal three or four times per month (Tr. 442). She goes grocery shopping about twice a month and needs someone to help her (Tr. 443).

      **2.**     **Vocational Expert Testimony**

Benjamin Johnson, Ph.D. testified as a vocational expert ("VE"), stating Plaintiff had past work as a production line worker in a factory, which was unskilled, light work with a specific vocational preparation ("SVP") of two (Tr. 436). He testified Plaintiff had also done work as a fast food worker/server, a chicken processor, and a packer in a factory, all of which also were unskilled, light work with an SVP of two (*id.*).

In response to a hypothetical involving an individual of Plaintiff's age, education and experience, who had the RFC for a reduced range of sedentary work, with certain postural limitations, the need to work in a clean environment, the need to do work avoiding the general

11

public, who is limited to work involving simple one and two step procedures, the VE stated there would be unskilled work such an individual could perform (Tr. 445). The VE also stated that if the ALJ found Plaintiff's testimony to be credible she would not be able to perform any work (Tr. 446).

## **Analysis**

Plaintiff asserts the ALJ erred in affording little weight to the opinions of her treating physician, Dr. Harkins, and the consulting examiner, Dr. Walter, and only some weight to the opinion of another treating physician, Dr. Parsons [Doc. 15 at 4]. Plaintiff asserts Dr. Harkins' assessment should have been given great weight and Dr. Walter's opinion, which was consistent with Dr. Harkins' opinion, should also have been accorded some weight [*id.* at 5]. Plaintiff also asserts the opinion of Plaintiff's podiatrist, Dr. Parsons, that Plaintiff should stay off her feet as much as possible due to her plantar fasciitis and diabetes, buttresses both Dr. Harkin's and Dr. Walter's opinion, and should have been accorded considerable weight [*id.*].

Applicable regulations state the Commissioner will evaluate every medical opinion and will consider the following factors in deciding what weight to give each opinion: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. §§ 404.1527(d), 416.927(d). Although a treating physician's opinion typically is entitled to substantial deference, as argued by Plaintiff, the ALJ is not bound by that opinion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The Sixth Circuit has consistently stated the treating source's opinion is entitled to deference only if it is based on objective medical findings, *see, e.g.*, *Warner*, 375 F.3d at 390; *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993), *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985), and not contradicted by substantial evidence to the contrary. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d

12

922, 927 (6th Cir. 1987).

If the treating source's opinion is not given controlling weight, its weight is determined by the same factors that are considered in evaluating every medical opinion. It is well-settled law in the Sixth Circuit that if an ALJ does not accord controlling weight to the opinion of a claimant's treating source, the ALJ must apply certain factors in determining what weight to give the opinion. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007). The ALJ:

> is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.

*Id.* (quoting 20 C.F.R. § 404.1527(d)).

The responsibility for weighing the record evidence, including conflicting physicians' opinions, and resolving the conflicts rests with the ALJ. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). The ALJ must weigh the opinions of the acceptable medical sources, including the opinions of the treating physicians and the state agency medical sources, as required by applicable regulations, and resolve inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2)(i) and 416.927(d)(4), (f)(2)(i); *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) ("Claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings."). With respect to the wight given to the opinions, the Sixth Circuit has held the opinion of a treating physician generally is entitled to greater weight than the contrary opinion of a consulting physician who has examined the claimant on only a single occasion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997); *Hardaway*, 823 F.2d at 927. An ALJ may,

13

however, discount a treating physician's opinion based on an opinion of an examining or a reviewing physician in appropriate circumstances. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990).

In addition, the ALJ must give good reasons for the weight given a treating source's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 461-62 (6th Cir. 2005). The reason-giving requirement is "clearly procedural ensuring 'that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 544). The reason-giving requirement in § 404.1527(d)(2) "exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Id.* In the Sixth Circuit:

> [b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions, denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

In his decision, the ALJ discussed the medical evidence and explained his reason for the weight given to the opinions of the treating sources as follows:

> There is no evidence of additional treatment until February 2004, when the claimant presented to Denise Harkins, M.D., complaining of diabetes, a possible kidney infection, coughing, shortness of breath, and anxiety. Physical examination showed an elevated blood pressure of 148/96 and right flank tenderness. Cardiac rate and rhythm were normal and there was no evidence of edema, depression, or anxiety. Medications were prescribed for the claimant's chronic conditions and acute complaints. Her medications were subsequently

14

adjusted for better control of her hypertension and diabetes and these conditions improved. In fact, in May and July 2004, Dr. Harkins did not report any significant abnormalities on physical examinations. The claimant denied headaches or any cardiac, respiratory, or musculoskeletal symptoms. In November 2004, she alleged swelling in her feet and legs, nasal congestion, urinary urgency, dyspnea, and a cough. Physical examination, however, showed clear lungs, normal cardiac rhythm, no edema, intact neurovascular status and gait, and normal lumbar alignment. The claimant alleged migraines in December 2004 with no improvement with medications. She also reported swelling in her feet but admitted that Lasix helped. She denied cardiac or respiratory symptoms, or back/joint pain. Dr. Harkins noted no abnormalities on physical examination, but adjusted the claimants medications . . . .

The claimant has also apparently been treated by a podiatrist, Lisa Parsons, D.P.M., but those records have not been submitted for consideration. Instead, Dr. Parsons provided a letter in September 2006, in which she reports the claimant has been treated for plantar fasciitis and diabetes. She opined that the claimant needs to stay off her feet as much as possible and recommended stretching exercises, supportive shoes, and ice at night.
. . .
[X]-rays and MRIs have only shown mild degenerative findings. Physical examinations have not demonstrated marked losses in range of motion, strength, or sensation. The claimant's alleged frequency of migraine headaches is also unsupported by the medical record. Since her alleged onset in January 2000, the record demonstrated complaints of migraines on few occasions and there are only two emergency room visits for migraine related symptoms. Further, although recurrent TIAs was reported by Dr. Harkins, this is only evident on one occasion, in March 2003. In addition, objective testing at that time, which included a MRA, MRI, and CT scans of the head, was normal. Cardiac work-up has also been either negative or shown only minimal abnormalities. The claimant has not experienced frequent asthmatic episodes requiring medical care, and wheezing has been noted on only rare occasions. Although the claimant has alleged a history of fibromyalgia, the record does not show specific trigger point tenderness for this condition in the medical record nor has the claimant been referred or sought chronic pain management. Certainly, the medical findings do not show abnormalities to support the claimant's testimony that it takes over an hour to "straighten" her hands in the mornings.

I also note the inconsistencies in her reported activities of daily living which adversely affect her credibility. At the hearing, she denied driving and only admitted cooking simple meals, sweeping, and shopping for groceries with assistance. However, in agency questionnaires, the claimant's activities included caring for her children, reading, shopping, watching television, attending church regularly, and preparing meals. In addition, although the claimant denied doing flower arrangements . . . , she admitted to the consulting psychological examiner that she still enjoys this activity once or twice a month. She admitted that she drives, albeit rarely, for short distances, which additionally contradicts her testimony.

The claimant has not reported significant adverse side effects from prescribed medications . . . . Despite her self-reports of neuropathy and retinopathy from diabetes, EMG of the legs was normal and physical examinations have not shown significant visual deficits. Finally, the claimant has consistently alleged swelling in her hands and legs; however, physical examinations in the seven years since her alleged onset date demonstrate rare findings of edema with no joint swelling or effusion. . . .

In determining the claimant's residual functional capacity, I have considered Dr. Harkins' statement in August 2005 in which she opines that the claimant is totally disabled. Dr. Harkins indicated that the claimant had been hospitalized on multiple occasions for strokes or migraines, had a significant problem with fine motor movements and manipulation with the hands, and had difficulty with lifting, carrying, and prolonged standing/walking. However, the medical record demonstrates only one hospitalization for a TIA versus a complicated migraine with no objective testing indicative of a stroke. Further, no gross abnormalities of the hands have been reported with only mild limitation of motion and episodic strength deficits noted on physical examinations. Indeed, Dr. Harkins' own records show no significant musculoskeletal abnormalities with a normal gait and neurovascular status. Finally, conclusory opinions of total disability cannot be afforded significant weight as determinations of disability under the Social Security Act are reserved to the Commissioner (SSR 96-5p). Therefore, Dr. Harkins' opinion is afforded little weight.

I have also considered the statement provided by the treating podiatrist in which she recommends the claimant stay off her feet as much as possible. Although vague, I afford her statement some weight, given the claimant's fatigue, plantar fasciitis, and arthritis, and find the claimant should avoid jobs which require

> standing/walking more than two hours in an eight-hour workday. However, the overall medical record does not show abnormalities which can reasonably be expected to restrict standing/walking to a greater level.
>
> The consulting physician, Dr. Walter, opined limitations indicative of sedentary work but only on a part-time basis. However, her examination showed only mildly diminished strength, some fluid under the right knee, and slight narrowing on x-rays. There was no joint redness, swelling, spasm, or enlargement. Indeed, the medical record since the alleged onset date does not show abnormalities which can reasonably be expected to preclude the claimant from lifting/carrying up to 10 pounds occasionally, sitting up to six hours in a workday, and standing/walking up to six hours in a workday. Therefore, I afford little weight to Dr. Walter's overall opinion and find the claimant capable of sedentary work activity.
>
> However, given her history of asthma, I further find that she should avoid jobs which require significant exposure to pulmonary irritants, such as dust, smoke, and fumes. In addition, due to her mild degenerative disease, scoliosis, and other symptoms, I find that she should limit her performance of postural movements to no more than a frequent basis.

(Tr. 21-22, 24-26) (internal citations omitted).

In this case, it appears the ALJ followed the appropriate steps in deciding not to give controlling weight to the opinions of Plaintiff's treating physicians. *See Wilson*, 378 F.3d at 544. The ALJ also applied the correct legal standard to weigh the opinions of the acceptable medical sources, as required by applicable regulations, and appropriately resolved inconsistencies between the acceptable sources. *See Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) (per curiam) ("Claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings.").

The ALJ properly rejected Dr. Harkins' conclusory statements about Plaintiff's employability set forth in her August 1, 2005 letter; namely, that Plaintiff was "totally disabled" and

17

not "reliably employable" (Tr. 285) as addressing an issue, *i.e.*, disability and/or the ability to work, which is exclusively reserved to the Commissioner under the regulations. *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 576-77 (6th Cir. 2007) (citing 20 C.F.R. §§ 404.1527(a), (b) and (e)). Moreover, the ALJ noted Dr. Harkin's assessment – that Plaintiff was so limited she would not ever be reliably employable – was not supported by or consistent with the objective evidence of record, including Dr. Harkins' own findings as the result of her examinations of Plaintiff.

The ALJ also expressly considered Dr. Walter's opinion and did accept Dr. Walter's finding that Plaintiff was capable of sedentary work. However, he declined to accept the limitation in Dr. Walter's opinion that Plaintiff was capable of sedentary work on a part-time basis only as being unsupported by Dr. Walter's findings. Dr. Louise Patikas, M.D., who reviewed the record for the state agency on August 26, 2005, specifically stated that Dr. Walter's assessment was overly restrictive based upon the objective data from her examination (Tr. 348).[2]

Plaintiff also argues the opinion of her podiatrist, Dr. Parsons, should have been accorded great weight as it also supports a finding of disability. Again, the ALJ expressly considered the opinion of Dr. Parsons as expressed in her letter of September 12, 2006, and accorded some, but not great or controlling, weight to the opinion. However, the ALJ properly declined to accord great weight to Dr. Parsons' opinion on the ground that objective evidence underlying Dr. Parsons' treatment/examination of the Plaintiff does not appear in the record.

Having reviewed the record in its entirety particularly with regard to the claims of error

---

[2] In his decision, the ALJ noted the state agency reviewing physicians did not have the benefit of the most recent medical records which were before him (Tr. 26). However, Dr. Patikas clearly had the record of Dr. Walter's consultative examination of Plaintiff before her for review when she commented on it.

asserted by the Plaintiff, I **CONCLUDE** the decision of the Commissioner denying benefits to Plaintiff is supported by substantial evidence in the record and I **RECOMMEND** it be affirmed.[3]

### Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, for the reasons stated above it is **RECOMMENDED**[4]:

(1)  Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**;

(2)  Defendant's motion for summary judgment [Doc. 18] be **GRANTED**;

(3)  Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure **AFFIRMING** the Commissioner's decision which denied benefits to the Plaintiff; and

(4)  This action be **DISMISSED**.

s/<i>Susan K. Lee</i><br>
SUSAN K. LEE<br>
UNITED STATES MAGISTRATE JUDGE

---

[3] Although Plaintiff also contends this Court should reverse the decision of the ALJ and award benefits, the Court may reverse an ALJ's decision and immediately award benefits only if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1984) (quoting *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176. Thus, because I have concluded the decision of the Commissioner is supported by substantial evidence, I also conclude a reversal and/or remand for an award of SSI benefits to Plaintiff is unwarranted.

[4] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).